[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried before the court, involves a dispute over legal fees charged by defendant law firm to its client, the plaintiff, William W. Mulvey, who resides at 37 Father Peter's Lane in New Canaan. The defendant is the law firm, Rucci, Burnham, Carta Edelberg, a limited liability partnership, located in Darien.
In 1999, the plaintiff filed a complaint containing four counts. In the first count of his complaint, the plaintiff alleged that in 1997 he entered into a written fee agreement with the defendant law firm to represent him in connection with an appeal to the Superior Court of a decision by the New Canaan Planning Zoning Commission approving a subdivision of a large tract of land adjacent to his home. The plaintiff alleged also that the written fee agreement provided that he would be billed by the defendant for legal fees for the appeal to the Superior Court on an hourly basis not to exceed $26,250; that when he realized in August, 1998, that the defendant was billing him in excess of $26,250 he instructed the defendant to cease working on his behalf, but that the defendant law firm continued to perform legal services; that in November of 1998, the defendant presented a proposal to the plaintiff to settle the zoning appeal, which was due to be tried in a few days, and the plaintiff agreed to the proposed settlement because he was apprehensive about increased legal fees; that in December of 1998, the defendant billed the plaintiff for approximately $31,000 more than the agreed maximum fee, and the plaintiff terminated his attorney-client relationship with the defendant, which thereafter engaged in "actively dunning" the plaintiff, including "shouting telephone calls," about allegedly unpaid legal fees; and that the defendant claimed a "lien" on the plaintiff's file.
In the second count of the complaint, the plaintiff alleged that he instructed the defendant law firm not to withdraw the appeal until the settlement with the developer was final and binding; that the defendant ignored those instructions and withdrew the case from court before the proposed settlement was binding; and that the plaintiff was thereby deprived "of the entire benefit of his bargain with the defendant" and he sought a return of all funds previously paid to the defendant because of a "failure of consideration." The plaintiff alleged in the third count of his complaint that by attempting to collect more in legal fees than was agreed to in the retainer letter, the defendant law firm breached the fiduciary duty it owed the plaintiff as his attorneys. In the fourth count of the complaint, the plaintiff alleged that the defendant's conduct in over billing him constituted deceptive and unscrupulous trade practices in violation of General Statutes § 42-110 et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff sought compensatory and punitive damages. CT Page 6910
The defendant denied the material allegations of the complaint but did agree that: (1) in January of 1997, the law firm was hired to represent a number of property owners, including the plaintiff as leader of the group, to oppose an application for subdivision approval pending before the Planning and Zoning Commission of New Canaan; (2) the defendant and the plaintiff as well as the other property owners agreed that the law firm would charge the clients on an hourly basis; (3) the defendant subsequently commenced an appeal to the Superior Court after the Planning and Zoning Commission approved the proposed subdivision; (4) at the direction of the client property owners, the defendant entered into settlement discussions with the developer of the subdivision during the pendency of the appeal; (5) on or about December 29, 1998, the plaintiff instructed the defendant not to do any further legal work on his behalf, but did not tell the defendant law firm to cease doing any work for the other property owners; and (6) the plaintiff and the other property owners in the neighborhood authorized the defendant to settle the appeal from the subdivision approval and the law firm did so in an agreement that was binding on the property developer and the defendant therefore withdrew the appeal.
The defendant also filed three special defenses. In the first special defense, the defendant alleged that the clients instructed the law firm to settle the subdivision appeal, which it did. The settlement agreement included a provision that the developer would buy the plaintiff's property for $1,100,000, which was $200,000 more than the property was worth; that this settlement was binding on the developer and consequently the appeal was withdrawn with the approval of the court; that after the plaintiff told the defendant to terminate its representation of him, the plaintiff hired another lawyer who worked out a different and less favorable arrangement for the plaintiff that released the developer of its obligation to purchase the plaintiff's property and failed to provide for certain protection to the plaintiff's property by way of drainage and location of the proposed buildings on the subdivision; and as a result, the plaintiff failed to mitigate any damages that he might have incurred or sustained.
In its second special defense, the defendant contended that the plaintiff caused any damages which he may have incurred. The defendant alleged in the third special defense that the plaintiff failed to make timely payments of its bills and as a result of his breaching the fee arrangement, the defendant was thereby released or relieved from the cap on legal fees that was contained in the fee agreement.
First, it is important to note that this case is not about malpractice, or the competence or professionalism of the legal services rendered by the defendant law firm to the plaintiff. There is no CT Page 6911 complaint by the plaintiff in that regard. Secondly, this case is not about legal fees charged to the plaintiff for the defendant's representation of the plaintiff in opposing an application before the Planning Zoning Commission by a developer for a subdivision of property adjacent to the plaintiff's property.[1] Those invoices were paid in full by the plaintiff. This case is strictly about legal fees and alleged over billing in connection with the appeal to the Superior Court of the decision by the Planning Zoning Commission which voted to approve the proposed subdivision.
In a letter dated June 2, 1997, the defendant proposed a fee agreement to the plaintiff for appealing the decision of the Planning Zoning Commission to the Superior Court. The letter was directed to the plaintiff and also to David Kirby and Rita Kirby of Father Peter's Lane in New Canaan. The key provision in this retainer letter is the statement that: "[for the Superior Court phase of this appeal we would cap our fee at $26,250 plus disbursements."[2]
Four days later, on June 6, 1997, after a meeting with the plaintiff and others, the defendant sent a letter to the plaintiff summarizing the fee arrangement, which again reiterated that the defendant would bill at an hourly rate of $175 per hour "with a cap of $26,250 if the appeal is lost or we do not stop the subdivision application in one of the other collateral actions." This second letter also provided that if the subdivision was "disallowed or stopped" there would be a bonus of 25% over the $26,250, and that if the case was "settled" the clients would be charged $200 an hour "subject to the cap." In November of 1998, the defendant law firm withdrew the appeal in an action entitled Mulvey v. Planning Zoning Commission, Docket No. 97-0159708, with the approval of the settlement and withdrawal by the court in accordance with General Statutes § 8-8 (m).[3]
Thus, the billing is subject to a cap as the case was "settled" and the defendant is not entitled to a bonus as that was limited to a reversal of the Planning Zoning Commission's decision. The June 6, 1997 summary of fees states: "If we win, however, and the subdivision was disallowed or stopped in one of the collateral cases our fee would then be $32,813 (a 25% bonus)." On the other hand, if the case was "settled" as it was, the defendant's fee would be "$200 per [hour] subject to the cap."
After the Planning Zoning Commission approved the subdivision in May of 1997, the plaintiff signed the retainer agreement of June 2, 1997, which authorized the defendant to commence an appeal to the Superior Court. The issues are whether the defendant billed the plaintiff more than the cap of $26,250 in connection with the administrative or record appeal to this court, and whether the plaintiff paid more or less than CT Page 6912 required by the cap.
The defendant began to bill the plaintiff on a monthly basis starting July 25, 1997, for those legal services involving the appeal to this court under a separate account number, a9749002, which was subject to the cap. The billing on the appeal continued to January 5, 1999. The fees for legal services on this account, the appeal to the Superior Court, the "02" matter, were set forth in fifteen separate invoices,[4] which total $65,240 of legal fees, plus disbursements of $2,555.53, for total billings of $67,796.03. Although this billing by the defendant greatly exceeded the cap of $26,250, the defendant contends that it kept billing the plaintiff even after the cap had been reached only because it hoped to recover legal fees from the developer under General Statutes §22a-18 (e), the Environmental Protection Act.[5] The defendant states that it did not nor does a now seek any more legal fees from the plaintiff over and above what he had already paid. The firm did not file a counterclaim or any other action to recover legal fees. Thus, under the defendant's theory of the case, the amount of billing is irrelevant because all the defendant sought by way of legal fees is the cap figure of $26,250, which the defendant impliedly concedes was already paid because it did not file a counterclaim and has not sought to recover any money from the plaintiff in any other forum.
The next and major issue is how much did the plaintiff pay to the defendant on the "02" matter, the appeal to the Superior Court. The defendant's own records indicate that the plaintiff paid the defendant legal fees of $35,770.61 on the appeal, plus disbursements of $1,806.37, for a total of $37,576.95, which is more than the cap of $26,250. It follows that the plaintiff would be entitled to a refund of $9,520.16, the difference between $35,770.61 and the cap of $26,250, plus interest at 10%, in accordance with General Statutes § 37-3a.[6]
However, there is a complicating factor in determining exactly how much the: plaintiff did pay the defendant with respect to the administrative appeal to this court. The defendant chose to divide up the payment received on one invoice into two separate parts. The invoice was number 1770 sent to the plaintiff on July 25, 1997, after the fee agreement had been signed. The total invoice was for $16,368 of legal fees, and disbursements of $697.37, for a total of $17,065.37. The defendant split this number and attributed $7,276 of legal fees, and $697.37 of disbursements, a total of $7,973.37, for services allegedly not covered under the cap on the theory that they were performed before the cap was executed on June 2, 1997. The $9,092 balance of invoice number 1770, was attributed to services covered under the cap.
Thus, one can arrive at two different amounts for how much the CT Page 6913 plaintiff paid the defendant on the "02" or appeal matter. If all the payments on the "02" appeal are totaled, it means that the plaintiff paid the defendant legal fees of $35,770.61 which were subject to the cap of $26,250, or $9,520.16 too much as indicated previously. If one agrees with the defendant, however, that $7,276 of invoice 1770 should be subtracted from the total paid on the "02" appeal, that would mean the plaintiff paid legal fees of $2,244.61 more than the cap of $26,250 required. Therefore, in either event, the plaintiff is entitled to a refund, and the remaining question is narrowed to how much of a refund.
The defendant's contention that it was proper to split up the one invoice is not persuasive. First, just one invoice number, 1770, was sent out and not two separate invoices as if the legal services were both pre-cap and post-cap charges. Secondly, the 1770 invoice clearly referred to the appeal, the "02" matter. Attorney Rucci's letter of June 2, 1997, quoted above in footnote 2, refers explicitly to "the Superior Court phase of this appeal." The cap, that is, involved the appeal, not the date on which the services were rendered. Allocating a portion of one invoice, which bears the "02" designation, to pre-cap services would result in decreasing the amount paid by the plaintiff for the appeal to this court. This allocation was not adequately justified from either an accounting or a legal standpoint, with one exception.
The invoice 1770, however, does refer to attending two meetings of the Planning Zoning Commission on May 15, 1997 and May 20, 1997, for which the plaintiff was billed $1,350. All the other legal services on that invoice involved the administrative appeal to this court, even though some of such services were performed before the cap letter. The cap letter referenced the "appeal" and stated this is what the defendant will charge for that appeal. The defendant should, however, be credited with $1,350 the amount charged on the "01" matter, even though it appeared on invoice 1770, the "02" appeal.
Therefore, the plaintiff overpaid the defendant by $8,170.61[7] and is entitled to a refund of that amount, plus interest at 10%. The interest should run from his last payment to the defendant on February 4, 1999 to the date of this judgment, which amounts to $2,712.19, for a total of $10,882.80 due the plaintiff.
The defendant claims that because the plaintiff was sometimes late making payments of the various invoices, the whole fee cap arrangement was voided is not persuasive. There was no provision in the fee agreement for such a result, just a reference to interest charges for late payments. The defendant has not offered any authority to the effect that making late payments voids an entire fee arrangement between lawyer and client. CT Page 6914
Near to the latter part of the trial, a controversy arose about a $10,000 retainer paid by the plaintiff to the defendant. The retainer was based on a letter written in January of 1997 outlining the defendants charges for representing the plaintiff and some of his neighbors in connection with the developers application for subdivision approval pending before the Planning Zoning Commission. The defendant appears to have credited that retainer to some other matter, but it is not part of the case before this court which, according to the complaint, concerns only alleged over billing on the "02" case, the appeal to the Superior Court. Whether the plaintiff has a good case for a refund on the administrative appeal would have to be determined, if at all, in a separate proceeding, but it is not part of the present case.
With respect to the second count in which the plaintiff seeks a refund of all money paid to the defendant on the theory that the defendant law firm withdrew his case before the settlement became binding on the developer, this claim is rejected. Part of the original settlement was that the plaintiff's home would be purchased by the developer for $1,100,000. The plaintiff first agreed to this part of the settlement but later changed his mind when he thought he could get a higher price. The defendant's successor attorney succeeded in changing the settlement so that the plaintiff no longer was obliged to sell his home. The plaintiff still lives in the same home and has not attempted to sell it during these last several years.
Thus, the plaintiff has not been damaged by the settlement which he agreed to, and he obtained the benefit of other aspects of the settlement, including the planting of a large number of trees in order to better screen the proposed subdivision, and the posting by the developer of a bond to insure that there would be proper drainage. The plaintiff claims he only agreed to the settlement because the defendant was threatening him with increased fees to pursue the appeal by trying the case in the Superior Court. The defendant pointed out its opinion that a settlement of the appeal was in the best interests of the plaintiff because even if he prevailed on the appeal, it was likely that the developer would return to the Planning Zoning Commission to revise its application to correct whatever the Superior Court found to warrant a reversal of the Commission, and that would result in a new application calling for new legal fees to oppose it, and if approved a new administrative appeal to the court with resultant new fees. The defendant was not threatening to charge new and additional legal fees to try the pending appeal before the Superior Court, and the settlement of the appeal was voluntary on the part of the plaintiff.[8]
The third count of the complaint seeks punitive damages as authorized CT Page 6915 by CUTPA. In order to make out a cause of action in CUTPA, a plaintiff is required to establish, under the so-called "cigarette rule" (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree it meets one of the criteria or because it meets all three to a lesser extent. Murray v. Taylor, 65 Conn. App. 300, 337, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).
While a single act may be sufficient to establish a CUTPA violation, the fact that it is a single act is not strong evidence indicating it is a general business practice. Not every mistake is immoral, unethical, oppressive or unscrupulous and the evidence did not establish a CUTPA violation. There were 17 separate invoices sent by the defendant with respect to both the proceedings before the Planning Zoning Commission and the appeal to this court, which totaled approximately $118,000 and 26 separate checks coming in, for a total of over $73,000 so an error of approximately $8,200 amidst all that billing is not indicative of a CUTPA violation. This same reasoning applies to the count in the plaintiff's complaint about breach of fiduciary duty. It is true that the plaintiff was over billed and he paid more than he should have, but the defendant has adequately demonstrated by the requisite level of proof that these errors were not the result of some sinister scheme as claimed by the plaintiff but rather were caused by accounting errors.
Therefore, judgment enters in favor of the plaintiff to recover a total of $10,882.80, which includes $8,170.61 of legal fees, plus interest of $2,712.19. Court costs are to be taxed by the clerk of this court in favor of the plaintiff in accordance with General Statutes § 52-25
and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 29th day of May, 2002.
William B. Lewis, Judge T.R.